UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————X

PAMELA THORPE, *as Parent and Legal Guardian
of Infant Plaintiff* S.T.,

*Plaintiffs,*

- against -

WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT,
and WEST HEMPSTEAD HIGH SCHOOL, PRINCIPAL
ALVARO ESCOBAR, ASSISTANT PRINCIPAL MICHELE
LAMBO-MARON, ASSISTANT PRINCIPAL and DIRECTOR
OF GUIDANCE ADAM HOPKINS, CHRISTOPHER
MISTRETTA, EDWARD COSGROVE, CHRISTOPHER
SENIA, DISTRICT EMPLOYEES "JANE and JOHN DOES
1-10", and INFANT DEFENDANT J.L.

*Defendants.*

——————————————————————X

**DOCKET NO.: CV-17-4910**



**COMPLAINT**



***JURY TRIAL DEMANDED***

Plaintiff, PAMELA THORPE, as the parent and legal guardian of infant Plaintiff S.T., by and

through her attorneys, THE LAW OFFICES OF FREDERICK K. BREWINGTON, and for their

Complaint against Defendants herein, states and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil action requesting compensatory damages, punitive and monetary relief

for the actions of DEFENDANTS WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT,

WEST HEMPSTEAD HIGH SCHOOL, PRINCIPAL ESCOBAR, ASSISTANT PRINCIPAL

LAMBO-MARON, ASSISTANT PRINCIPAL AND DIRECTOR OF GUIDANCE ADAM

HOPKINS, DIRECTOR OF PHYSICAL EDUCATION CHRISTOPHER MISTRETTA, SCIENCE

TEACHER AND THE COACH OF THE VARSITY BASKETBALL TEAM  EDWARD

COSGROVE, MATH TEACHER AND ASSISTANT COACH OF THE JUNIOR VARSITY AND

VARSITY BASKETBALL TEAM CHRISTOPHER SENIA, DISTRICT EMPLOYEES "JANE and

JOHN DOES 1-10", and INFANT DEFENDANT J.L., (hereinafter "DEFENDANTS"), in their

individual and official capacities, for committing acts depriving PLAINTIFFS of rights secured by the United States Constitution brought pursuant to *42 U.S.C.* § 1983, including municipal liability as per the Fourth and Fourteenth Amendment violations and New York State Law claims.

2.      PLAINTIFFS allege that DEFENDANTS, acting individually and collectively, did negligently, wantonly, recklessly, intentionally and knowingly deprive PLAINTIFFS of rights including, but not limited to, negligent supervision, failure to supervise, failure to protect, and failure to adhere to established policy.

3.      INFANT PLAINTIFF sustained injuries including, but not limited to, negligent intentional infliction of emotional distress, intentional infliction of emotional distress, assault and battery, and false imprisonment. Further, INFANT PLAINTIFF suffered damages including, but not limited to, loss of educational opportunities, loss of privileges, defamation, tortuous interference with INFANT PLAINTIFF'S education, as a result of a physical altercation between himself and INFANT DEFENDANT J.L.., that occurred at WEST HEMPSTEAD HIGH SCHOOL, located at 400 Nassau Blvd., West Hempstead, New York 11552.

4.      Specifically, PLAINTIFFS allege that the DEFENDANTS WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT and WEST HEMPSTEAD HIGH SCHOOL, sitting as *loco parentis,* with regard to its students, failed to prevent the attack on INFANT PLAINTIFF S.T., and refused to protect S.T. from subsequent harassment.

5.      DEFENDANTS WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT and WEST HEMPSTEAD HIGH SCHOOL, sitting in *loco parentis* with regard to it students, failed to proved adequate security for the safety of INFANT PLAINTIFF S.T., proliferated a consistent and continuous pattern of violations against INFANT PLAINTIFF S.T.'s civil rights and refused to abide

2

by DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT'S rules and policies, which caused INFANT PLAINTIFF S.T. to be assaulted harassed, and psychologically harmed while in the care, custody, and control of DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT.

6.      DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT, sitting in *loco parentis* with regard to its students, intentional and/or willful refusal to follow the rules and regulations of its own policies directly resulted in the foreseeable harm to INFANT PLAINTIFF S.T. DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT showed a willful disregard for INFANT PLAINTIFF S.T.'s safety by using its authority to create an environment where the injuries sustained by INFANT PLAINTIFF S.T. would be allowed to occur.  These assertive actions by DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT constitute civil rights and constitutional violations.

7.      PAMELA THORPE, as the parent and legal guardian of INFANT PLAINTIFF S.T. suffered psychological injuries including severe and continuing emotional distress from DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT'S refusal to take the necessary and proper steps required to protect her son.

8.      Specifically, PLAINTIFFS allege that DEFENDANTS negligently, wantonly, recklessly, intentionally and knowingly failed to keep INFANT PLAINTIFF safe from being targeted with sexual harassment, threats and physical violence in the boy's locker room.  INFANT PLAINTIFF alleges that DEFENDANTS failed to properly investigate the conduct of the Varsity Basketball team despite the PLAINTIFF'S repeated notice to DEFENDANT SCHOOL DISTRICT officials about the situation that marked toll to INFANT PLAINTIFF'S academic success and

3

emotional state. DEFENDANTS have done virtually nothing to ensure that INFANT PLAINTIFF

is educated without fearing for his personal safety and enduring daily humiliation. DEFENDANTS

have not followed their own established procedures for handling and investigating complaints and

for disciplining students involved in the harassment.

9.      As a result of DEFENDANTS' actions/omissions, INFANT PLAINTIFF suffered

emotional and psychological pain and suffering, continues to see a social worker, was prescribed a

drug issued by a psychiatrist, loss of opportunity, loss of privileges and related damages incurred by

and on behalf of PLAINTIFF PAMELA THORPE as a result of injuries sustained by her child,

INFANT PLAINTIFF S.T., while present at WEST HEMPSTEAD HIGH SCHOOL.

## JURISDICTION AND VENUE

10.     Jurisdiction of this Court is invoked under 28 *U.S.C.* §§ 1331 and 1334.

11.     The Court is requested to exercise supplemental jurisdiction with respect to Plaintiffs'

State Law claims pursuant to 28 *U.S.C.* § 1367.

12.     Venue in the Eastern District of New York is proper pursuant to 28 *U.S.C.* § 1391.

The cause of action arose in NASSAU COUNTY, which is situated in the Eastern District of New

York.

## ADMINISTRATIVE PROCEEDINGS

13.     On or about February 26, 2016, Plaintiffs served a Notice of Claim upon  Municipal

Defendants pursuant to New York Municipal Law §50-e(1), related to the same incident and

unlawful actions that are the subject of this Complaint.

14.     On or about August 17, 2016, Plaintiffs was questioned/deposed at an administrative

hearing pursuant to New York General Municipal Law §50-h.

4

15.     All conditions precedent to instituting the lawsuit have been complied with in a timely manner.

## PARTIES

16.     PLAINTIFF PAMELA THORPE (hereinafter "PLAINTIFF"), is the parent and legal guardian of INFANT PLAINTIFF, S.T., is a citizen of the United States, and a resident of the State of New York, County of Nassau.

17.     INFANT PLAINTIFF S.T. is a resident of the State of New York, County of Nassau. INFANT PLAINTIFF S.T. was a infant at the time of the event that are the subject of the within lawsuit and is not currently of the age of majority. At all times relevant to this Complaint, INFANT PLAINTIFF S.T. is a citizen of the United States, and a student at WEST HEMPSTEAD HIGH SCHOOL, within DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT.

18.     DEFENDANT WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT (hereinafter "WHUFSD") is a school district comprised of several schools including WEST HEMPSTEAD HIGH SCHOOL (hereinafter "WHHS"), which exists and operates by virtue of the laws of New York State and is governed by the laws of the State of New York and the United States. WHHS is located in West Hempstead, New York.

19.     ALVARO ESCOBAR (hereinafter "ESCOBAR") was, at all times relevant to this Complaint, the Principal of WHHS, and as such had a duty of care to oversee the safety, well-being and security of the students including, INFANT PLAINTIFF S.T. DEFENDANT ESCOBAR is being sued herein individually and in his official capacity.

20.     MICHELLE LAMBO-MARON (hereinafter "LAMBO-MARON") was, at all times relevant to this Complaint, an Assistant Principal of WHHS and as such, had a duty of care to

oversee the safety, well-being and security of the students including INFANT PLAINTIFF S.T.
DEFENDANT LAMBO-MARON is being sued herein individually and in her official capacity.

21.     ADAM T. HOPKINS (hereinafter "HOPKINS") was, at all times relevant to this
Complaint, an Assistant Principal and Director of Guidance, and as such, had a duty of care to
oversee the safety, well-being and security of the students including INFANT PLAINTIFF S.T.
DEFENDANT HOPKINS is being sued herein individually and in his official capacity.

22.     CHRISTOPHER MISTRETTA (hereinafter "MISTRETTA") was, at all times
relevant to this Complaint, the Director of Physical Education, Health and Athletics at WHHS, and
as such, had a duty of care to oversee the safety, well-being and security of the students including
INFANT PLAINTIFF S.T.  DEFENDANT MISTRETTA is being sued herein individually and in
his official capacity.

23.     EDWARD COSGROVE (hereinafter "COSGROVE") was, at all times relevant to
this Complaint, a Science Teacher and the Coach of the Varsity Basketball team at WHHS, and as
such, had a duty of care to oversee the safety, well-being and security of the students including
INFANT PLAINTIFF S.T.   DEFENDANT COSGROVE is being sued individually and in his
official capacity.

24.     CHRISTOPHER SENIA (hereinafter "SENIA") was, at all times relevant to this
Complaint, a Math Teacher and Assistant Coach of the Junior Varsity and Varsity Basketball team
at WHHS, and as such, had a duty of care to oversee the safety, well-being and security of the
students including INFANT PLAINTIFF S.T.  DEFENDANT SENIA is being sued individually and
in his official capacity.

25.     DISTRICT EMPLOYEES "JANE and JOHN DOES 1-10" were at all times relevant

6

to this Complaint, employed by DEFENDANT WHUFSD, and as such, had a duty of care to oversee the safety, well-being and security, including INFANT PLAINTIFF S.T. The identities of DISTRICT EMPLOYEES "JANE and JOHN DOES 1-10" are unknown to PLAINTIFFS (but known to WHUFSD) as of the date of this Complaint. DISTRICT EMPLOYEES "JANE and JOHN DOES 1-10" are being sued herein individually and in their official capacities.

26.     INFANT DEFENDANT J.L. was, at all times relevant to this Complaint, a student at WHHS within the WHUFSD at the time of the events in question, and currently has not attained the age of majority. Upon information and belief, DEFENDANT J.L. and his parents and natural guardians, "JOHN and JANE DOES" LEWIS, are and were residents of the State of New York, County of Nassau. "JOHN and JANE DOE" LEWIS were responsible for the actions of their infant son. "JOHN and JANE DOE" LEWIS are being sued herein in their capacity as parents and legal guardians of DEFENDANT J.L.

27.     DEFENDANTS WEST HEMPSTEAD UNION FREE SCHOOL DISTRICT and WEST HEMPSTEAD HIGH SCHOOL are an education corporation and association in Nassau County, New York, existing pursuant to New York Education Law. The SCHOOL DISTRICT is a "person" within the meaning of 42 *U.S.C.* § 1983. The School District is non-sectarian and exempt from taxation pursuant to § 408 of New York's real property tax. WEST HEMPSTEAD HIGH SCHOOL is in the SCHOOL DISTRICT.

## **FACTUAL ALLEGATIONS**

28.     On or about December 7, 2015 in the boy's locker room at WHHS, at approximately 5:00 p.m. INFANT PLAINTIFF S.T. was menaced, verbally abused, bullied, assaulted, injured, battered, and subjected to a physical attack by another student of the High School, INFANT

7

DEFENDANT J.L.

29.     Upon information and belief, at the aforementioned time and place INFANT PLAINTIFF S.T., along with the other basketball teammates, were changing into gym garments in preparation for the scheduled basketball practice. INFANT DEFENDANT J.L. subjected multiple students including INFANT PLAINTIFF S.T. to prolonged abuse, assault. Specifically, INFANT DEFENDANT J.L. forcefully grabbing and attempting to touch INFANT PLAINTIFF S.T.'s genitals without permission.

30.     INFANT DEFENDANT J.L. approached INFANT PLAINTIFF S.T. from behind subjecting INFANT PLAINTIFF S.T. to physical and sexual assault. During the assault, INFANT PLAINTIFF S.T. tried to escape when his body was caused to fall against the lockers. At all times during the incident, INFANT PLAINTIFF S.T. physically and verbally expressed his opposition to INFANT DEFENDANT J.L.'s behavior by smacking INFANT DEFENDANT J.L.'s hands away and yelling "STOP!"

31.     Following the above incident, INFANT DEFENDANT J.L. attacked INFANT PLAINTIFF S.T. once again while on the premises of WHHS. The above assaults caused INFANT PLAINTIFF S.T. great emotional pain, suffering and humiliation.

32.     At all times relevant to the aforementioned incident, there was no supervision, coaches, staff, and/or security in the locker room and/or in or around the immediate area. The students were unsupervised for prolonged periods of time in an area, and at a time of day, where DEFENDANTS knew and/or should have known required additional supervision.

33.     On the night of December 26, 2015, INFANT PLAINTIFF S.T. confided in his mother about the incident that occurred on December 7, 2015 after PLAINTIFF PAMELA

8

THORPE, noticed INFANT PLAINTIFF S.T. exhibiting odd behavior, such as depression, anxiety, fear, and lethargy.

34.     Subsequently, PLAINTIFF, PAMELA THORPE, emailed DEFENDANT ESCOBAR of the aforementioned incident that occurred on December 7, 2015. Shortly after, Nassau County Police arrived at PLAINTIFF'S door inquiring about the incident PLAINTIFFS complained to WHHS.

35.     After the Nassau County Police took INFANT PLAINITFF S.T.'s statement that was signed, PLAINTIFFS went to WHHS for a meeting with DEFENDANTS ESCOBAR and MISTRETTA. During the meeting, INFANT PLAINTIFF S.T. explained to DEFENDANTS ESCOBAR and MISTRETTA the events that occurred in the boy's locker room of WHHS. DEFENDANT ESCOBAR informed PLAINTIFFS that before any disciplinary action could take place, further investigation was necessary.

36.     On December 28, 2015, DEFENDANT ESCOBAR called PLAINTIFF informing her that he met with the witnesses INFANT PLAINTIFF S.T. mentioned in his complaint including INFANT DEFENDANT J.L. DEFENDANT ESCOBAR informed PLAINTIFFS that each witness had no recollection of what happened.

37.     During their meeting, DEFENDANT ESCOBAR proceeded to state: "[a]pparently, kids do butt-slapping in the locker rooms to that nature." DEFENDANT ESCOBAR continued to explain that what frightened INFANT PLAINTIFF S.T. was a disagreement that occurred a year and a half ago between DEFENDANT J.L. and INFANT PLAINTIFF S.T.

38.     PLAINTIFF insisted that further investigation was necessary and that the teammate/witnesses he interviewed collectively determined that they would not "snitch" as to what

9

occurred the day of the incident in the boy's locker room.

39.     On December 30, 2015 PLAINTIFFS met with DEFENDANTS COSGROVE and SENIA, the coaches of the basketball team because they were not in the initial meeting PLAINTIFFS had with DEFENDANT ESCOBAR and MISTRETTA.

40.     During the December 30, 2015 meeting, INFANT PLAINTIFF S.T. explained to DEFENDANTS COSGROVE and SENIA the events that took place on December 7, 2015 up until the meeting PLAINTIFFS had with DEFENDANTS ESCOBAR and MISTRETTA on December 28, 2015.

41.     PLAINTIFF and INFANT PLAINTIFF S.T. showed DEFENDANTS COSGROVE and SENIA the group chat conversation that the basketball team was a part of. In that conversation were the same witnesses DEFENDANT ESCOBAR called in for a meeting. Collectively, the witnesses/group chat members/teammates determined that neither person would "snitch" as to what occurred the day of the incident in the boy's locker room.

42.     On the same day, after meeting with DEFENDANTS COSGROVE and SENIA, PLAINTIFF and INFANT PLAINTIFF S.T. were called by DEFENDANT ESCOBAR for another meeting. During this meeting, PLAINTIFF showed DEFENDANTS ESCOBAR and MISTRETTA the group chat conversation of the witnesses DEFENDANT ESCOBAR initially interviewed agreeing that neither would "snitch" as to what occurred the day of the incident in the boy's locker room between INFANT PLAINTIFF S.T. and INFANT DEFENDANT J.L.

43.     PLAINTIFF insisted that another investigation take place and DEFENDANT ESCOBAR agreed that another investigation would take place.

44.     On January 2, 2016, PLAINTIFF called DEFENDANT ESCOBAR inquiring about

10

the results of the second investigation.   DEFENDANT ESCOBAR informed PLAINTIFF that INFANT PLAINTIFF was attacked and how another student while on the junior varsity basketball team was attacked also but he moved on from it, suggesting that INFANT PLAINTIFF S.T. should also move on from this incident.

45.      PLAINTIFF insisted that INFANT PLAINTIFF S.T. "just can't move on." DEFENDANT ESCOBAR stated that there would be a meeting with the entire basketball team and the incident would be further investigated.

46.      No disciplinary action against DEFENDANT J.L. who continued his classes and his participation on the WHHS basketball team.  However, INFANT PLAINTIFF S.T. continued to suffer ostracization from his teammates.

47.      As a result of this, on January 5, 2016 INFANT PLAINTIFF S.T. was getting ready for an away basketball game but his teammates continued to verbally attack him with name calling and threats and INFANT PLAINTIFF S.T. ultimately froze and did not go to the away game.

48.      As a result of the December 7, 2015 incident and the subsequent ostracization  from the WHHS basketball team, INFANT PLAINTIFF S.T. quit the basketball team and began seeking treatment from Victor Marchese, a licensed certified social worker, in January 2016.

49.      Along with the sessions INFANT PLAINTIFF S.T. had with Victor Marchese once every other week, INFANT PLAINTIFF S.T. also sees a psychiatrist, Dr. Roque, once a month who prescribes him with Lexapro which is a drug to treat depression and anxiety.

11

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 Negligent Supervision/Failure to Supervise

50.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained

in Paragraphs 1 through 49 of this Complaint with full force and effect as though fully set forth

herein.

51.    At all times relevant to the claims in this matter, DEFENDANTS WHHS,

ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT

EMPLOYEES "JANE and JOHN DOES 1-10"were agents, servants, designees, and/or employees

of DEFENDANT WHUFSD, and maintained, as a result of that official duty to ensure the protection

and safety of the INFANT PLAINTIFF S.T. from harm by other students.

52.    At all relevant to the claims in this matter, DEFENDANTS ESCOBAR, LAMBO-

MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE

and JOHN DOES 1-10" as state actors, and as administrators of a school and school district that was

acting in *loco parentis* with regard to INFANT PLAINTIFF S.T., collective WHHS DEFENDANTS

had a duty to protect INFANT PLAINTIFF S.T. and provide an environment of care and safety in

which to attend public school and safely travel throughout the school premises, including but not

limited to, the locker room of WHHS.

53.    The duty of DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS,

MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE and JOHN DOES 1-

10" to provide a safe learning environment was further heightened by DEFENDANT WHHS'

awareness of complaints and concerns of physical safety raised to DEFENDANT WHHS, its agents,

servants, designees, and/or employees by INFANT PLAINTIFF S.T. and PLAINTIFF PAMELA

12

THORPE.

54.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as their obligations while sitting in *loco parentis* over students in their care, custody, and control to protect WHHS students' rights to substantive due process, personal security, bodily integrity, and the right to be protected, particularly INFANT PLAINTIFF S.T.

55.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were negligent, careless, and /or reckless in failing to properly supervise their students and failing to properly train their staff as to proper methods of supervision.  Said negligence/recklessness thus provided the opportunity for DEFENDANT J.L. foreseeable attack INFANT PLAINTIFF S.T.

56.    Without any provocation or permission from INFANT PLAINTIFF S.T., DEFENDANT J.L. proceeded to assault, bully, harass, and taunt INFANT PLAINTIFF S.T.  Such acts occurred while school activities were taking place wherein INFANT PLAINTIFF had a reasonable expectation to be free from unlawful battery, assault, and physical and psychological harm.  Further, INFANT PLAINTIFF had a reasonable expectation of safety and security to be provided by DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10".

57.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to meet the obligations set forth within DEFENDANT WHUFSD's Code of Conduct and properly

13

supervise INFANT DEFENDANT J.L., a student known to have a history and/or propensity of violence, prior to the assault upon INFANT PLAINTIFF S.T. on December 7, 2015.

58.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" further breached their duty of care to INFANT PLAINTIFF S.T. by failing to provide proper and sufficient security measures throughout WHHS and by failing to place security and/or teachers in locations such as the locker room when and where students would be most vulnerable to a foreseeable attack, violent assault, and/or harassment.

59.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" created a dangerous condition of property by permitting assaultive, bullying INFANT DEFENDANT J.L. to remain on the basketball team and execute no disciplinary action despite multiple corroborative statements of such assaultive and bullying behavior. DEFENDANTS particularly failed to hold an in school educative assembly with respect to bullying, sexual harassment, or physical intimidation and assault of student by students.

60.    As a result of the aforesaid, DEFENDANTS breach of security and negligent failure to supervise students, the INFANT PLAINTIFF S.T. suffered serious emotional injuries, psychological distress, pain and suffering, and Post Traumatic Stress Disorder, subsequently interfering with his ability to adequately perform at school and during basketball games.

61.    As a result of the above negligence and the consequent harm suffered by INFANT PLAINTIFF S.T., PLAINTIFFS seeks compensatory damages in excess of TWO MILLION ($2,000,000.00) DOLLARS, and any other relief this Court may find just and proper.

14

## AS AND FOR THE SECOND COUNT
### 42 U.S.C. § 1983 - Failure to Protect

62.     PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in Paragraphs 1 through 61 of this Complaint with the full force and effect as though fully set forth herein.

63.     At all times relevant to the claims in this matter DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10"as state actors, had a duty to protect IN ANT PLAINTIFF S.T. and provide an environment of care and safety in which to attend th public school and travel safely and without fear throughout the premises including, but not limited to the locker room.

64.     DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were required under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as their obligations while sitting in *loco parentis* over students in their care, custody, and control, to protect WHHS students' rights to substantive due process, personal security, bodily integrity, and the right to be protected, particularly INFANT PLAINTIFF S.T.

65.     Subsequent to engaging in intimidating and bullying behavior, injury, harm, and engaging in physically aggressive behavior on December 7, 2015, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10", despite their specific notice or knowledge of these assaults upon INFANT PLAINTIFF S.T., and their heightened duty to protect students from such

15

violence, continued to disregard their obligations to provide a safe learning environment free from harassment and bullying, per DEFENDANT WHUFSD's Code of Conduct, as well DEFENDANT WHUFSD's duties while sitting in *loco parentis* of INFANT PLAINTIFF S.T. DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failure to protect INFANT PLAINTIFF S.T. implicitly condoned the continued bullying, taunting, harassing, disruptive behavior, and threats to PLAINTIFF'S safety, welfare, and security by INFANT DEFENDANT J.L.

66.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were negligent, grossly negligent, careless, and/or reckless, in failing to provide proper and sufficient security measures throughout WHHS resulting in the brutal attack on December 7, 2015.

67.    Once INFANT PLAINTIFF S.T. was attacked, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were negligent careless and/or reckless in refusing to implement remedial efforts to address the bullying and assault. Further, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to contain, supervise, instruct, restrain, limit, secure, or otherwise prevent INFANT DEFENDANTS J.L. from having access to INFANT PLAINTIFF S.T. at WHHS, despite an order of protection.

68.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" further breached their duty of care to the students of WHHS, including INFANT PLAINTIFF S.T. by failing

16

to properly report and/or provide proper and necessary psychological assistance to INFANT PLAINTIFF S.T.

69.    Through their recklessness, disregard, inaction, and failures, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to provide reasonable conditions of safety and bodily integrity that rose to the level of deliberate indifference for the harm and violations visited upon INFANT PLAINTIFF S.T.

70.    As a result of the pattern and practice of DEFENDANT WHUFSD, its agents, servants, designees, and/or employees, of concealing criminal activity, including bullying, harassment, battery, and assault at WHUFSD, and the indifferent treatment of bullying, harassment, assault and battery towards children and parents, INFANT PLAINTIFF S.T. was the victim of a vicious assault. The injuries include but are not limited to: emotional injuries, fear, stress, anxiety, depression, sadness, lack of appetite, nervousness, shaking, crying, and Post-Traumatic Stress Disorder (PTSD). INFANT PLAINTIFF S.T.'s grades were also adversely affected due to the incident.    INFANT PLAINTIFF S.T.'s involvement in extra-curricular activities, including basketball, has been adversely affected. INFANT PLAINTIFF S.T. also suffered special damages, medical costs/fees, legal costs/fees, loss of educational opportunities, loss of privileges, loss of time, stigmatization, defamation, violations of his civil rights, tortuous interference with INFANT PLAINTIFF'S education, all proximately caused by DEFENDANTS. INFANT PLAINTIFF S.T. lost his right to free and public education, an educational setting free from bullying, harassment, intimidation, civil rights violations, and INFANT PLAINTIFF S.T. was physically and psychologically injured as a result of the negligence and/or deliberate indifference of

17

DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10".

71.     As parents of INFANT PLAINTIFF S.T., Plaintiff PAMELA THORPE suffered from the attacks by DEFENDANT J.L. by being misinformed/uninformed by DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10", and by DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" continued failure and refusal to discharge their duty and promise to secure and protect INFANT PLAINTIFF S.T. from a known and obvious threat to her safety and well-being.

72.     PLAINTIFF PAMELA THORPE further suffered expenses and damages associated with the medical care of her son, along with the psychological injuries including severe and continuing emotional distress from watching DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" take no action to protect her son from the brutal attack from INFANT DEFENDANT J.L. and then allow INFANT PLAINTIFF S.T. to continue experiencing intimidation, bullying, and ostracization during school hours.

73.     That by reason of the foregoing, PLAINTIFF PAMELA THORPE suffer and continue to suffer irreparable injury and monetary damages in excess of TWO MILLION ($2,000,000.00) DOLLARS as well as punitive damages, attorney's fees, and any other relief this Court may find just and proper.

18

### AS AND FOR THE THIRD COUNT
### 42 U.S.C. § 1983 and Negligence -
### Failure to Adhere to Established Policy

74.　PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in Paragraphs 1 through 73 of this Complaint with the full force and effect as though fully set forth herein.

75.　At all times relevant to the claims in this matter DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" as state actors, had a duty to protect INFANT PLAINTIFF S.T. and provide an environment of care and safety in which to attend the public school and travel safely and without fear throughout the premises including, but not limited to the locker rooms.

76.　DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were also required under DEFENDANT WHUFSD's Code of Conduct to protect WHHS students' rights to substantive due process, personal security, bodily integrity, the right to be in a safe and supportive learning environment, free from harassment and bullying, and the right to be protected, particularly INFANT PLAINTIFF S.T.

77.　DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" is obligated to "confront issues of harassment, bullying, and or/discrimination in any situation that threatens the emotional or physical health or safety of any student. . .who is lawfully on school property or at a school function." (Code of Conduct p. 11).

19

78.     DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" as outlined in DEFENDANT WHUFSD's Code of Conduct was obligated to have in place, maintain, and implement a program to prevent, diminish, and resolve bullying and harassment prior to the attack upon INFANT PLAINTIFF S.T. Further, DEFENDANT WHUFSD was obligated to have a District Administrator in conjunction with a Dignity Act Coordinator assist in overseeing and enforcing DEFENDANT WHUFSD's previously established anti-bullying and harassment program. The responsibility for proper implementation of DEFENDANT WHUFSD's Code of Conduct falls upon DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10". However, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to implement and maintain said anti-bullying and harassment program prior to, during, and following the bullying and assault of INFANT PLAINTIFF S.T. by INFANT DEFENDANT J.L.

79.     DEFENDANT WHUFSD's Code of Conduct defines harassment and bullying as "the creation of a hostile environment by conduct or threats, intimidation or abuse, including cyberbullying, that (a) has or would have the effect of unreasonably and substantially interfering with a student's educational performance, opportunities or benefits, or mental, emotional, or physical well-being; or (b) reasonably causes or would reasonably be expected to cause a student to fear his or her physical safety; or © reasonably causes or would reasonably cause physical injury or emotional harm to a student; or (d) occurs off school property and creates or would foreseeable create a risk of substantial disruption within the school environment, where it is foreseeable that the

20

conduct, threats, intimidation or abuse might reach school property." (Code of Conduct p. 3).

80.     DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were made aware of INFANT DEFENDANT J.L.'s propensity for threats and violence, and had specific knowledge or notice regarding INFANT DEFENDANT J.L.'s propensity for harassment and bullying, as defined by DEFENDANT WHUFSD's Code of Conduct. Despite the fact that INFANT DEFENDANT J.L. had exhibited the propensities of harassment and bullying, as well as the complete disregard of DEFENDANT WHUFSD's Code of Conduct, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to properly report, properly discipline, or otherwise use reasonable care to restrain INFANT DEFENDANT J.L. from his harassing, bullying, violent, and criminal behavior.

81.     Due to DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failure to abide by DEFENDANT WHUFSD's established security policies and procedures, DEFENDANT J.L. was permitted to act recklessly and disruptively in the boy's locker room of WHHS. As a result, DEFENDANT J.L. was given the opportunity to violate, and did violate, DEFENDANT WHUFSD's Code of Conduct by attacking, bullying, intimidating, harassing, and injuring infant Plaintiff S.T.

82.     Due to DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failure to abide by DEFENDANT WHUFSD's established security policies and procedures, there were no teachers, support staff, safety officers, and/or security personnel properly stationed in the locker

room of DEFENDANT WHHS to provide proper security and protection of its students, particularly INFANT DEFENDANT S.T.

83. Upon receiving INFANT PLAINTIFF S.T.'s report of bullying DEFENDANT WHUFSD's Code of Conduct obligated DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" did promptly investigate INFANT PLAINTIFF S.T.'s complaint, however, upon finding that there was a violation of WHUFSD's Code of Conduct, no prompt corrective action that was reasonably calculated to end the harassment, bullying, or eliminate the hostile environment to ensure the safety of those against whom such harassment or bullying was directed at took place. (Code of Conduct p. 35).

84. DEFENDANT WHUFSD's Code of Conduct obligates DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" to "ensure the safety of the student or students against whom such harassment, bullying or discrimination was directed." (Code of Conduct p. 35). DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to proved the proper monitoring of the boy's locker room of WHHS, allowing INFANT DEFENDANT J.L. free and unlimited access to INFANT PLAINTIFF S.T. DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" provided no means o removal or surveillance and/or monitoring of the initiator of the bullying and harassment, INFANT DEFENDANT J.L.

22

85.     DEFENDANT WHUFSD's Code of Conduct obligated DEFENDANTS ESCOBAR LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" to be responsible for "behaviors which disrupt learning." (Code of Conduct p. 5). Despite continuous forewarning, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" refused to sufficiently intervene in the prevention and deprivation of INFANT PLAINTIFF S.T.'s ability to freely acquire an education by failing to institute an effective strategy preventing DEFENDANT J.L. from continuing his escalating bullying and harassment outlined in DEFENDANT WHUFSD's Code of Conduct.  DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to implement a strategy to stop the bullying, harassment, and violence perpetrated by INFANT DEFENDANT J.L., and instead attempted to institute a strategy altering the behavior of INFANT PLAINTIFF S.T.

86.     DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" refused to sufficiently intervene in the prevention and deprivation of INFANT PLAINTIFF S.T.'s ability to freely acquire an education by failing to continually supply access to a free education.  Because DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" failed to protect INFANT PLAINTIFF S.T. from harassment, bullying, and violence, INFANT PLAINTIFF S.T. discontinued his participation from the basketball team in order to protect the INFANT PLAINTIFF S.T. from harm.

87.     By that reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of TWO MILLION ($2,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983 - Municipal Liability

88.     PLAINTIFF repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 87 of this Complaint with the full force and effect as though fully set forth herein.

89.     At all times relevant to the claims in this matter, DEFENDANTS WHUFSD, WHHS, PRINCIPAL ESOCBAR, ASSISTANT PRINCIPAL LAMBO-MARON, et al., were agents, servants, designees, and/or employees of DEFENDANTS WHUFSD.

90.     DEFENDANTS willfully ignored and failed to act upon threats of violence to INFANT PLAINITFF S.T., despite corroboration from local law enforcement, resulting in foreseeable, direct harm befalling INFANT PLAINTIFF S.T.

91.     Despite repeated warnings in person and in writing of violent threats against INFANT PLAINTIFF S.T., DEFENDANT WHUFSD undertook merely a minimal investigation and/or did not take the complaints and warning impending violence seriously, thus breaching their duty of care and ignoring the foreseeable effect upon INFANT PLAINTIFF S.T. by being deliberately indifferent to the mistreatment of INFANT PLAINTIFF S.T.

92.     INFANT PLAINTIFF S.T. has been harassed and assaulted in the boy's locker room while changing into his gym garments.  DEFENDANT WHUFSD's failure to properly monitor, provide a means of removal or surveillance of the initiator of the bullying and harassment,

24

DEFENDANT J.L. created the opportunity for the bullying, harassment, and violence to occur and continue to occur.

93.     DEFENDANT WHUFSD's inaction and failure to provide reasonable conditions of safety and bodily integrity, rise to the level of deliberate indifference for the harm visited upon INFANT PLAINTIFF S.T.

94.     As a direct and proximate cause of DEFENDANT WHUFSD's actions, inactions, failures and indifference for the rights of INFANT PLAINTIFF S.T., said INFANT PLAINTIFF was the victim of an assault.  The injuries include but are not limited to: emotional injuries, fear, stress, anxiety, depression, sadness, lack of appetite, nervousness, shaking, crying, and Post-Traumatic Stress Disorder (PTSD).  INFANT PLAINTIFF S.T.'s grades were also adversely affected due to the incident.  INFANT PLAINTIFF S.T.'s involvement in extra-curricular activities, including basketball, has been adversely affected.  INFANT PLAINTIFF S.T. also suffered special damages, medical costs/fees, legal costs/fees, loss of educational opportunities, loss of privileges, loss of time, stigmatization, defamation, violations of his civil rights, tortuous interference with infant Plaintiff's education, all proximately caused by DEFENDANTS.  INFANT PLAINTIFF S.T. lost his right to free and public education, an educational setting free from bullying, harassment, intimidation, civil rights violations, and INFANT PLAINTIFF S.T. was physically and psychologically injured resulting from the negligence and/or deliberate indifference of DEFENDANT WHUFSD.

95.     That by reason of the foregoing, PLAINTIFFS suffer and continue to suffer irreparable injury and monetary damages in excess of TWO MILLION ($2,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### AS AND FOR A FIFTH COUNT
#### Negligence/Gross Negligence

96.     PLAINTIFFS repeat, reiterate, and re-allege each and every allegation contained in Paragraphs 1 through 95 of this Complaint with the full force and effect as though fully set forth herein.

97.     At all times relevant to the claims in this matter, DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" were agents, servants, designees, and/or employees of DEFENDANT WHUFSD and maintained, as a result of that official status, a duty of care to INFANT PLAINTIFF S.T.

98.     PLAINTIFF required attendance at school in pursuit of his education at WHHS during the time of the assault, required DEFENDANTS WHUFSD, WHHS, and PRINCIPAL ESCOBAR and ASSISTANT PRINCIPAL LAMBO-MARON to have a special duty of care, ensuring the protection and safety of the INFANT PLAINTIFF S.T. from harm by other students.

99.     DEFENDANTS WHUFSD, WHHS, and PRINCIPAL ESCOBAR were negligent, careless, and/or reckless in failing to properly supervise their students, and failing to properly train their staff as to proper methods of supervision.  Said negligence/recklessness thus provided the opportunity for DEFENDANT assailant J.L. to act recklessly and disruptively in the boy's locker room, and ultimately and foreseeable attack INFANT PLAINTIFF S.T.

100.    DEFENDANTS WHUFSD, WHHS, and PRINCIPAL ESCOBAR further breached their duty of care to INFANT PLAINTIFF S.T. by failing to provide proper and sufficient security measures throughout WHHS, particularly in the boy's locker room, when the most vulnerable

children are and there is less teacher presence.

101.    DEFENDANTS WHUFSD, WHHS, and PRINCIPAL ESCOBAR created a
dangerous condition of property by permitting the violent student, J.L. to not only remain in school,
but remain on the basketball team with INFANT PLAINTIFF S.T.  DEFENDANTS failed to take
any steps to prevent the future impending attack by INFANT DEFENDANT J.L.  DEFENDANTS
particularly failed to hold any assembly with respect to the attack, failed to communicate to the
student body that bullying and assaults such as the one against INFANT PLAINTIFF S.T. would not
be tolerated.

102.    DEFENDANTS WHUFSD, WHHS, et al. could reasonably foresee that their breach
of duty of care to protect INFANT PLAINTIFF S.T. would result in harm to INFANT PLAINTIFF
S.T.

103.    As a direct and proximate cause of the aforesaid DEFENDANTS breach of their duty
of care to INFANT PLAINTIFF S.T., said INFANT PLAINTIFF S.T. did suffer serious physical and
emotional injuries, psychological distress, pain and suffering leading to Post-Traumatic Stress
Disorder.

104.    As a result of the above negligence and the consequent harm suffered by INFANT
PLAINTIFF S.T., PLAINTIFFS seeks compensatory damages in the amount of TWO MILLION
($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate.

### AS AND FOR A SIXTH COUNT
### FALSE IMPRISONMENT

105.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in
Paragraphs 1 through 104 in this Complaint with the same force and effect as though fully set forth

27

herein.

106.    INFANT DEFENDANT J.L. lacked any authority, reason or legal justification to seize or retain INFANT PLAINTIFF S.T. in a prolonged physical altercation for any period of time.

107.    INFANT DEFENDANT J.L. (1) intentionally confined INFANT PLAINTIFF S.T.; (2) INFANT PLAINTIFF S.T. was conscious of the confinement; (3) INFANT PLAINTIFF S.T. did not consent to the confinement; and (4) the confinement was not otherwise justified.

108.    The vicious attack, false imprisonment, wrongful institutionalization and summary punishment against INFANT PLAINTIFF S.T., by INFANT DEFENDANT J.L. was committed when DEFENDANTS had a duty to protect and prevent INFANT PLAINTIFF S.T. from such harm.

109.    DEFENDANTS denied INFANT PLAINTIFF S.T. his Fourth and Fourteenth Amendment right to protection from unlawful seizure, equal protection and due process by falsely and unlawfully detaining INFANT PLAINTIFF S.T. for which there was no evidence or substantiation of any kind. In doing so, Defendants violated clearly established law and the rights to which INFANT PLAINTIFF S.T. was entitled to and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

110.    As a consequence of DEFENDANTS wrongful actions, intentional, negligent and reckless behavior and violations of state and federal laws, INFANT PLAINTIFF S.T. was seized, deprived of his freedom, was made to suffer physical injuries, great pain and suffering and was subject to great fear, terror, humiliation, and caused to suffer anxiety and anguish as a result of the aforesaid unlawful conduct by DEFENDANTS.

111.    As a result of the above assault and the consequent harm suffered by INFANT PLAINTIFF S.T., PLAINTIFFS seek compensatory damages in the amount of TWO MILLION

($2,000,000.00) DOLLARS, and any other such relief as this Court may find appropriate.

**AS AND FOR A SEVENTH COUNT**
**ASSAULT AND BATTERY**
**PENDENT JURISDICTION**

112.     PLAINTIFFS repeat, reiterate, and re-allege each and every allegation contained in Paragraphs 1 through 111 of this Complaint with the full force and effect as though fully set forth herein.

113.     INFANT DEFENDANT J.L. was, at the time of the attack upon infant Plaintiff S.T. sixteen years of age or older.

114.     INFANT PLAINTIFF J.L. attempted to cause serious physical injury to INFANT PLAINTIFF S.T. by repeatedly grabbing INFANT PLAINTIFF S.T.'s private parts, despite INFANT PLAINTIFF S.T.'s objections.

115.     INFANT DEFENDANT J.L. did in fact attack INFANT PLAINTIFF S.T. by tackling INFANT PLAINTIFF S.T. causing INFANT PLAINTIFF S.T. to fall against the lockers landing on his arm and his back.  INFANT DEFENDANT J.L, continued his attack upon INFANT PLAINTIFF S.T. by slapping INFANT PLAINTIFF S.T.'s hands away in an attempt to defend himself.

116.     The injuries caused by INFANT DEFENDANT J.L., and sustained by INFANT PLAINTIFF S.T. are serious psychological and emotional injuries including, but not limited to the painful and permanent effects of Post-Traumatic Stress Disorder.

117.     As a result of the above assault and the consequent harm suffered by INFANT PLAINTIFF S.T., PLAINTIFFS seek compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief this Court may deem appropriate.

29

## AS AND FOR AN EIGHTH COUNT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

118.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation as contained in Paragraphs 1 through 117 of this Complaint with the same force and effect as though fully set forth herein.

119.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10", through their conduct, acts and omissions as set forth in the above pleaded allegations, acted outrageously and beyond the bounds of decency, for their above-stated, respective roles in failing to provide INFANT PLAINTIFF S.T. a safe learning environment, failing to supervise, and failing to prevent harassment, bullying and assaults from other students, and failing to redress the wrongs done to INFANT PLAINTIFF S.T.

120.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10", committed the above stated reprehensible, extreme and outrageous conduct against INFANT PLAINTIFF S.T., with full knowledge that their conduct would cause severe and extreme emotional harm to INFANT PLAINTIFF S.T.

121.    Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that INFANT PLAINTIFF S.T. was deliberated, terrified, humiliated, and caused to suffer anxiety and anguish, by the DEFENDANTS conduct.

122.    As a result of the above assault and the consequent harm suffered by INFANT PLAINTIFF S.T., PLAINTIFFS seek compensatory damages in the amount of TWO MILLION

($2,000,000.00) DOLLARS, and any other such relief this Court may deem appropriate.

## AS AND FOR A NINTH COUNT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

123.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in Paragraphs 1 through 122 with the same force and effect as though fully set forth herein.

124.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10" through their conduct, acts and omissions as set forth in the above pleaded allegations, acted negligently, outrageously and beyond the bounds of decency, for their above-stated, respective roles in failing to provide INFANT PLAINTIFF S.T. a safe learning environment, failing to supervise, and failing to prevent harassment, bullying and assaults from other students, and failing to redress the wrongs done to INFANT PLAINTIFF S.T.

125.    DEFENDANTS ESCOBAR, LAMBO-MARON, HOPKINS, MISTRETTA, COSGROVE, SENIA, and DISTRICT EMPLOYEES "JANE AND JOHN DOES 1-10", in committing the above stated reprehensible, extreme and outrageous conduct against INFANT PLAINTIFF S.T. knew and/or should have known that their conduct would cause severe and extreme emotional harm to INFANT PLAINTIFF S.T.

126.    Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case in that INFANT PLAINTIFF S.T. was deliberated, terrified, humiliated, and caused to suffer anxiety and anguish, by the DEFENDANTS conduct.

127.    As a result of the above assault and the consequent harm suffered by INFANT

PLAINTIFF S.T., PLAINTIFFS seek compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief this Court may deem appropriate.

**WHEREFORE,** Plaintiffs demand judgment against Defendants

a. On the First Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

b. On the Second Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

c. On the Third Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

d. On the Fourth Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

e. On the Fifth Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

f. On the Sixth Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

g. On the Seventh Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

h. On the Eighth Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

i. On the Ninth Count in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

j. Punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS;

k. Declaratory judgment that Defendants willfully violated Plaintiffs' rights secured by federal and state law herein;

l. Award such other and further relief as this Court may deem appropriate.

### A JURY TRIAL IS HEREBY DEMANDED

Dated: Hempstead, New York
August 21, 2017

Respectfully Submitted,

THE LAW OFFICES OF
FREDERICK K. BREWINGTON

By: *|S| Frederick K. Brewington*
FREDERICK K. BREWINGTON
*Attorneys for Plaintiffs*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959